Judge Robertson
delivered (he opinion of the Court.
-Henry Edgar having died intestate, leaving a widow and infant son, and several half brothers and sisters, Robert Scroggin and Elizabeth Edgar, (the widow) administered on his estate. The widow afterwards intermarried with John Allin, and was the guardian of her infant son, who died intestate, before he attained 21 years of age.
*467 The estate left by H. Edgar, consisted:of' a tract land on which he died, and on which his widow con-linued to reside, and of some personal estate five slaves.
After the death of the infant son, Scroggin went to Delaware, where the half brothers and sisters of H. Edgar lived, and for a paltry consideration, purchased their right to the estate. After be had left home, Mrs. Allin, having heard that he intended to make the purchase for her, wrote to his wife, requesting her to inform him by letter, that she was unwilling that he should make the purchase, either for her, or for himself.
But after receiving this intelligence, he made thsr purchase, and ít seems probable that he represented to the sisters that he was negotiating the purchase for Mrs. Allin, and that he could not have made it without this representation.
This suit in .chancery was instituted in the name of Scroggin and one of the half brothers, who had not sold to him, to recover the land, slaves and personal estate of Henry Edgar, deceased. Allin and wife, and the half brothers and sisters of H. Edgar, excepting the complainant, were made defendants. Allin and wife deny the right of the complainants to any decree against them.
Publication was made against the other defendants, none of whom, except one, answered. He admitted.' that he had sold his interest to Scroggin, for $50-; but avers that he was induced to do so, solely for the benefit of Mrs. Allin, being assured by Scroggin, that he was making the purchase for her.
On a final hearing, the circuit court dismissed the bill.
By the 5th section of the act of 17.96, L Digest, 439, it is enacted that, “where an infant shall die without issue, having title to any real estate, of inheritance, derived by purchase or descent from the father,., the mother of such infant shall not succeed to nor enjoy the same, if there be living, any brother or sister of such infant, or any brother or sister óf the father,” &c.
*468 This act is entitled, “an act to reduce into one the several acts directing the course of descentsThe descent of the land left by Henry Edgar, is regulated by this act; and, therefore, his brothers and sisters are entitled to the land, after allowing the widow her dower.
But slaves descend, and personal estate is distributed according toan act of 1785, entitled, “an act directing the course of descents;" I. Digest. 435. By the 4th section of this act, it is enacted that, uif there he no father, then to his mother, brothers and sisters, and their descendants, or such of them as there may be."
The act of 1798, II. Digest, 1155, directing the mode in which slaves shall descend, declares that they shall be (sub modo,) real estate, and shall descend “as lands are directed to descend, in and by an act of the genera! assembly, entitled, “an act directing the course-of descents.”
By the 28th section of the act of 1797, I. Digest, 527, it is declared that personal estate “shall be distributed in the same proportions, and to the same persons as lands are directed to descend, in and by an act of the general assembly, entitled, ‘an act directing the course of descents.”
In the case of Pinkard, et al. vs. Smith and wife, Littell’s Select Cases, 336, this court decided that the act of 1785, “directing the course of descents," is that which is refered to in the act directing the descent of slaves,sand in that prescribing the mode for distributing personal estate. ' And this decision is, fn our opinion, manifestly right.
The act of 1785, is the only one whose title corresponds with that quoted in the said acts of 1797 and of 1798. And it could not be believed that the legislature could, in both acts, have made a mistake in the title of the act to which they meant to refer, and could have copied, in each instance, at different sessions, precisely the title of the act of 1785, if they intended to recite that of the act of 1796.
It follows, therefore, that Mrs. Allin was entitled to the slaves and personal estate, there being no brothers or sisters of her deceased son. But that the *469 brothers and sisters of her deceased husband are entitled to the land. The land descends according to the act of 1797. The slaves and personalty according to the act of 1785.
Chancellor will not entertain jurU-diction, when the' right sought to be enfoiced,is , pure^
Denny, for plaintiffs; Talbot, for defendants.
So far as the slaves and chattels were concerned, íhereforé, the court did not err in dismissing the bill,
Nor is' there any error in the dismissal as to the land. No reason is shown for applying to the chancellor for relief in this particular. The right sought to be enforced, is purely legal; and as the complainants had no right to distribution, the chancellor had no jurisdiction over the controversy for the land. He ought not, therefore, to have sustained the bill. There is no allegation or prayer which would give jurisdiction as to the land.
Besides, if the chancellor could have entertained jurisdiction of this matter, he ought not to have given relief to Scroggin, against the heirs of Edgar. Before he can be entitled to the aid of the'chancellor, he must show more clearly than he has done in this record, that there was no fraud, nor “TRUST,” in his contract for the purchase of the claims which he is endeavoring to enforce.
It is not the province of the court to intimate what may be the rights or what may be the eventual interests of the several parties concerned. The decree, on the record as it stands, is just and right.
The decree of the circuit court is affirmed.